IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM DAVID FOWLER, and | ) | |
| LINDA ANN YARBER FOWLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:08-CV-21 |
| | ) | |
| STEVE BURNS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of the motions for summary judgment filed by defendants James Randolph ("Randolph"), Mike Fincher ("Fincher"), and John Huffine ("Huffine") in their individual capacities [docs. 18, 27, 31]. Plaintiffs have filed a consolidated response to all three motions [doc. 40], and all three defendants have submitted a single reply brief [doc. 43]. Oral argument is not necessary, and the motions are ripe for the court's determination.

Plaintiffs have brought suit pursuant to 42 U.S.C. § 1983 for alleged violations of their constitutional rights and also based upon several state law claims. In the motions before the court, Randolph, Fincher, and Huffine contend they are entitled to qualified immunity as matter of law and therefore summary judgment should be granted in their favor. For the reasons that follow, all three motions will be granted in part and denied in part.

*Background*

In January 2007, five zero-turn Toro riding lawnmowers were stolen in Greeneville, Tennessee. On February 2, 2007, Randolph and Fincher interviewed three arrestees in the Unicoi County, Tennessee jail concerning the theft. The arrestees included Charles "Tiny" Mosier and Charles "George" Williams who indicated they had recently done work on the Fowler's property. According to Mosier, Williams had sold one of the Toro mowers to the Fowlers on the day of the theft for $4,500 in cash. While still in Unicoi County, Fincher called Huffine and relayed this information to him.

After receiving Fincher's call, Huffine and another officer went to the Fowler residence, but found no one home. According to Huffine, they went to some outbuildings looking for the Fowlers. In an open shed, they saw a tarp covering an object shaped like a riding lawnmower. The tarp did not completely cover the mower, so the bottom of the mower that was visible appeared to be the "Toro red" of the stolen mowers. Huffine entered the shed, removed the tarp, and compared the serial number on the mower with the numbers of the stolen mowers. The serial number on the mower matched that of one of the stolen mowers.

Huffine left a reserve officer to watch for the Fowlers while he and the officer with him left for supper. When they returned, the Fowlers were home. The Fowlers told Huffine that they had discovered the mower that day and had called the Unicoi County

Sheriff that morning and reported their finding. Huffine stated that he understood Mr. Fowler to mean that he spoke with the Sheriff of Unicoi County that morning. According to Huffine, the Fowlers denied purchasing the mower or having any prior knowledge of it. When Randolph arrived, the Fowlers gave their written consent to a search of their property. No additional lawnmowers were found. Huffine contends that at no time were the Fowlers handcuffed or constrained on their property during the search. Huffine and Randolph left the property about 9:00 p.m. after starting the search about 7:50 p.m.

William Fowler states in his declaration submitted in response to the motions for summary judgment that in November 2006 he hired two men named Tiny and George to do work around his house and property in Greene County, Tennessee. One day he mentioned that he needed a 4-wheel drive tractor with a front bucket. That night George returned to say that his cousin had a tractor like he, Mr. Fowler, wanted and that the cousin would take $12,000 for it and a trailer for hauling it. A few nights later George came by with the tractor, which Mr. Fowler drove and liked. Mr. Fowler says that he paid George $12,000 and asked for the papers on it. Although George said he would get them, Mr. Fowler states he never received them.

Mr. Fowler further relates in his declaration that on February 1, 2007, he saw a picture in the paper of the man he knew as George who had been arrested for stealing machinery and who was being held in the Unicoi County jail. Mr. Fowler then called Kent Harris, the Sheriff of Unicoi County, to have him check out the tractor he had purchased.

3

The Sheriff sent an officer who determined the tractor was stolen, which was returned to the owner.

With regard to the Toro mower, Mr. Fowler states in his declaration that on February 2, 2007, he went past the shed where he keeps his lawnmowers and noticed the cover over the lawn mowers did not look right. After checking, he found a red zero-turn mower that did not belong to him and his wife. He called the Unicoi County Sheriff's office again but was told the Sheriff was out but would return Saturday. Mr. Fowler said he would call back then. Mr. Fowler covered the mowers, and he and his wife left for Johnson City.

Mr. Fowler further states in his declaration that when they returned home, a Greene County Sheriff's Department officer was waiting for them. The officer told them that "he was to keep us here until some detectives got here." Mr. Fowler told his wife he wanted to show them the mower and went to the shed. When he turned the outside lights on, he noticed the cover on the mowers was pulled back half way. After the detectives arrived, Mr. Fowler showed them the mower. Mr. Fowler told them that he had called Sheriff Harris after he found it. According to Mr. Fowler, the detectives were hostile and one of them called him a liar.

On February 5, 2007, a meeting of officers Fincher, Huffine, and Randolph occurred in which it was determined that there was probable cause to arrest the Fowlers for possession of stolen property. Randolph's declaration submitted in support of his motion for summary judgment does not indicate that he participated in the meeting. However, in the

4

response to plaintiffs' request to conduct discovery, Randolph stated that the court could assume when ruling on the summary judgment motion "that he was one of the officers present in the February 5, 2007 meeting in which the evidence was reviewed and a conclusion was reached that there was probable cause to arrest the Fowlers for possession of stolen property" [doc. 42].

In Fincher's declaration supporting his motion for summary judgment, he lists the following information as the basis for believing that there was probable cause to arrest the Fowlers:

A. On January 7, 2007, Gina Tipton reported the theft of five zero-turn Toro riding lawnmowers from C & C Custom Trailers located at East Andrew Johnson Highway in Greeneville, Tennessee.

B. On that same day, I interviewed Betty Huff, who lives on Faulkner Road. She reported seeing a pickup truck pulling a trailer with four or five riding lawnmowers, going in the direction of Old Chuckey Highway, which is in the general direction of the Fowler residence. . . .

C. The Fowlers knew Charles Williams and Charles "Tiny" Mosier. Charles Williams also goes by the name of "George."

D. The Fowlers bought a new farm tractor and trailer from Mr. Williams, which was later determined to be stolen from Washington County. I learned this information from Detective Herman Hagey of the Washington County Sheriff's Office.

E. The Fowlers allegedly purchased the tractor and trailer for $12,000. The Fowlers allegedly paid $12,000 in cash that they had around the house.

5

F.      When Mr. Mosier was interviewed on February 2, 2007 at the Unicoi County Jail, he advised me that one of the stolen zero-turn Toro riding lawnmowers was sold by Charles Williams to the Fowlers for $4,500 on the day of the theft (January 7, 2007).

G.      Mr. Mosier told me where another stolen zero-turn Toro riding lawnmower was taken by him and Mr. Williams and sold. Other mowers were recovered based upon Mr. Mosier's information.

H.      Based upon Mr. Mosier's information, on February 2, 2007 a stolen zero-turn Toro riding lawnmower was discovered on the Fowlers' property in a shed.

I.      The Fowlers denied purchasing the lawnmower.  They claimed they discovered the lawnmower on February 2, 2007 and that Mr. Fowler called the Unicoi County Sheriff that morning to report the discovery of the lawnmower.  Detective Huffine understood Mr. Fowler to mean that he had spoken with Sheriff Harris on Friday February 2.  But on Monday February 5, we learned that Sheriff Harris had been out of town on Friday. Therefore, this appeared to be an inconsistency.

In the declaration submitted in support of her response to defendants' motions for summary judgment, Linda Fowler describes what occurred on the morning of February 5, 2007.  She states that three cruisers pulled into the driveway about 7:30 or 8:00 a.m. and officers rang the door bell and knocked on the door.  When she opened the door, "three officers entered my house without my permission."  The officers ordered her husband and herself to come with them for "questioning."  Mrs. Fowler says she was permitted to get dressed, but the officers hollered at her to hurry up as she was taking too long to dress.  When she went into the dining room, the officers put her in handcuffs.

6

Mrs. Fowler further states that the handcuffs were tight and painful, but the officers refused to loosen them. She relates that when she walked to the cruiser and tried to get in the back seat, the deputy pushed her in and she went down face forward. Mrs. Fowler states that she has degenerative disk disease in her lower back and has had two surgeries.

According to Mrs. Fowler, when she arrived at the jail, she had to change into jail clothes and flip flops. She was in the holding cell for two hours before she was placed in shackles and handcuffs and taken by an officer to "Mike's office, a young detective," who told the officer to remove the shackles and handcuffs. The detective questioned her about the tractor they bought from Williams. According to Mrs. Fowler, the officer did not believe the answers she gave to his questions. He told her she and her husband bought the lawnmower. Mrs. Fowler denied buying the lawnmower from Williams, but the detective told her she was lying.

Mrs. Fowler relates that after the questioning, she was taken to "another room with no chair or anything." She was given a mat and a "nasty sheet." Mrs. Fowler states, "After a long time Mike came into my room and told me he did not believe me. He said he was going to let me go, but he was sure I would be charged with hiding stolen property. I was released at about 6 p.m. or a little after, so I was in custody for over ten hours." Mrs. Fowler has never been charged with possession of stolen property.

Mr. Fowler relates that on the morning of February 5, 2007, he and his wife were preparing to go to the hospital for him to have blood work done. The officer s rang the door bell and ordered them to go with them. When he showed the officers the doctor's orders for blood work, he was allowed to have the blood work done and go straight to the Sheriff's office afterwards.

Mr. Fowler relates that when he arrived at the Sheriff's office at about 1:00 p.m., everything was taken from him, and he was required to change into a striped shirt and pants and flip flops. He was placed in the drunk tank. Mr. Fowler states that at approximately 3:15 p.m. he was put in leg shackles and put "in a room with a young curly headed guy and an older man." Mr. Fowler relates that he was questioned about the tractor and mower and that whatever he said he was told that it was a lie. He further relates that he told the officers that even if Tiny and George had shown him the mower and offered to sell it to him for $4,500, he could not have bought it because he had paid $12,000 for the tractor and did not have that much money left and had not seen a mower he would pay that much for. Mr. Fowler says he was finally released around 7:00 p.m., so he was in custody for close to six hours. Mr. Fowler has never been charged with possession of stolen property.

Fincher was involved in questioning both the Fowlers. In his declaration, he states that all persons brought into the Greene County Detention Center for questioning are required to change into jail clothing "for purposes of institutional security." He references that both the Fowlers signed Miranda waivers and gave written statements, which are

8

attached to Fincher's declaration. Fincher denies that he "screamed, yelled, berated or threatened" the Fowlers during his questioning of them. However, he does say that he told them when they left that the investigation would continue. Fincher does not recall whether the Fowlers were shackled and placed in handcuffs, though he says "it would not be unusual for a correctional officer to place someone in handcuffs or shackles while transporting that person from the Detention Center to the Sheriff's Office (which is where I interviewed the Fowlers)." Fincher states that the Fowlers were not charged with any crime because Williams refused to be interviewed because of the pending criminal charges against him relating to this same matter.

The Fowlers state in their response to the summary judgment motions that they "voluntarily withdraw their claims for damages arising from any unconstitutional and unlawful searches."

## II.

### *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party may discharge its burden by demonstrating that the non-moving party has failed to establish an essential

9

element of that party's case for which he or she bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party need not support its motion with affidavits or other materials negating the opponent's claim. *Id.* at 323. Although the moving party has the initial burden, that burden may be discharged by a "showing" to the district court that there is an absence of evidence in support of the non-moving party's case. *Id.* at 325 (emphasis in original).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

A. <u>Seizure of the Fowlers</u>

In the brief supporting his summary judgment motion, Fincher argues that the Fowlers were brought in for "investigatory detention." Huffine argues in his supporting brief that they were brought in "for questioning." As far as the court is concerned, there is no question of fact concerning the nature of the plaintiffs' detention. They were seized and taken into custody.

"To constitute a seizure of the person, just as to constitute an arrest, there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's 'show of authority' to restrain the subject's liberty." *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (citing *Cal. v. Hodari D.*, 499 U.S. 621, 626-28 (1991)).

> As Justice Scalia explained for the majority in *California v. Hodari D.*, 499 U.S. 621, 624, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991), "[f]rom the time of the founding to the present, the word 'seizure' has meant a 'taking possession,'" but that "[t]o constitute an arrest, however - the quintessential 'seizure of the person' under our Fourth Amendment jurisprudence - the mere grasping or application of physical force with lawful authority whether or not it succeeded in subduing the arrestee, was sufficient." *Id.* (citations omitted); *see also Adams v. City of Auburn Hills*, 336 F.3d 515, 519 (6th Cir. 2003) ("A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or

11

show of authority, . . . in some way restrained the liberty of a citizen.'" (quoting *Terry [v. Ohio],* 392 U.S. [1], 19 n.16, 88 S. Ct. 1868) [(1968)]).

*Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008).

Mrs. Fowler was taken from her home in handcuffs in a police car. At the police station she was made to change into jail inmate clothing and was handcuffed and shackled. She was kept in a holding cell both before and after questioning, and was held for several hours. Mr. Fowler was allowed to have his blood work done, but when he reported to the police station as ordered to do, he was made to change into jail inmate clothing. He was placed in shackles and kept in the drunk tank when not being questioned. The physical force and show of authority exhibited against both Mr. and Mrs. Fowler demonstrate that they were seized and taken into custody, not merely taken in for questioning. "A person has been 'seized' within the meaning of the Fourth Amendment when 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Gardenhire*, 205 F.3d at 313 (citing *United States v. Mendenhall*, 446 U.S. 544, 544 (1980)). Certainly, neither Mr. nor Mrs. Fowler believed they were free nor were they able to leave the police station where they were being held for questioning about the stolen tractor. Both plaintiffs were under arrest, and there is no material question of fact concerning this issue. What remains for determination is whether there was probable cause to arrest the plaintiffs and whether defendants are entitled to the defense of qualified immunity.

12

## B. Qualified Immunity

"Section 1983 serves as a vehicle to obtain damages caused by persons acting under color of state law whose conduct violates the U.S. Constitution or federal laws." *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *McQueen v. Beecher Comty. Schs.*, 433 F.3d 460, 463 (6th Cir. 2006)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Waters v. City of Morristown*, 242 F.3d 353, 358059 (6th Cir. 2001). Plaintiffs contend that their constitutional rights were violated because they were arrested without probable cause and without a warrant. Randolph, Huffine, and Fincher have raised the defense of qualified immunity. "A law enforcement officer's key defense to a § 1983 action is encapsulated in the concept of qualified immunity." *Drogosch v. Metcalf*, 557 F.3d 372, 377 (6th Cir. 2009)).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (citation and internal quotation marks omitted). Once the qualified immunity defense is raised, the plaintiff has the burden of showing that the officer is not shielded by qualified immunity. *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).

The qualified immunity analysis generally is performed in a two-step inquiry as set out by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). [1] Initially, the court must consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier*, 533 U.S. at 201). If this first step is satisfied by the plaintiff, then the court must inquire "whether the right was clearly established ... in light of the specific context of the case." *Id.* [2] "For a right to be 'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right. The unlawfulness of the official or employee's conduct must be apparent in light of pre-existing law. A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." *Durham v. Nu'Man,* 97 F.3d 862, 866 (6th Cir. 1996) (citations omitted); *see also Waeschle*, 576 F.3d at 544 (quoting *Durham*).

---

[1] In the Sixth Circuit, this two-part inquiry is sometimes expanded to include a third part. "The essential factors considered are, however, the same." *Everson v. Leis*, 556 F.3d 484, 494 n.4 (6th Cir. 2009) (citation omitted).

[2] The Supreme Court recently held that the two-step sequential analysis set out in *Saucier* is not longer mandatory. *Pearson*, 129 S. Ct. at 818. However, the Supreme Court "continue[s] to recognize that the *Saucier* protocol is often beneficial." *Id.*

The Fowlers contend that they were arrested without probable cause. Randolph, Fincher, and Huffine contend that there was probable cause, and all three defendants were involved in making the probable cause decision. Undoubtedly, at the time the Fowlers were taken into custody, the law was clearly established that officers may not arrest an individual without probable cause "to believe that an offense had been committed, was being committed, or was about to be committed." *Gardenhire*, 205 F.3d at 313 (quoting *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)).

> Generally, probable cause exists when the police have "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964). "Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *See [Estate of] Dietrich*, 167 F.3d [1007], 1012 [(6th Cir. 1999)].

*Gardenhire*, 205 F.3d at 315.

"The Fourth Amendment generally prohibits arrests unsupported by probable cause, although what constitutes probable cause depends on the nature of the criminal statute." *Evans v. City of Etowah*, 312 F. App'x 767, 769 (6th Cir. 2009) (citations omitted). The plaintiffs were accused of having possession of stolen property. Thus, the officers needed a reasonable and prudent belief that the Fowlers had violated the Tennessee theft statute in order to have probable cause to arrest them.

15

"In 1989, all the prior forms of larceny, and all of the receiving and concealing stolen property offenses were combined into a single offense known as 'theft of property'." *State v. Kennedy*, 7 S.W.3d 58, 70 (Tenn. Crim. App. 1999). Tenn. Code Ann. § 39-14-101 provides:

> Conduct denominated as theft in this part constitutes a single offense embracing the separate offenses referenced before 1989 as embezzlement, false pretense, fraudulent conversion, larceny, receiving or concealing stolen property, and other similar offense.

Tenn. Code Ann. § 39-14-103 provides:

> A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent.

Section 103 requires that the person "knowingly" obtain or exercise control over another's property with the "intent" to deprive the owner of the property.

In making a probable cause determination, the focus is only on the facts known to the officers at the time of the arrest. *Swiecicki v. Delgado*, 463 F.3d 489, 499 (6th Cir. 2006) (citing *Hunter v. Bryant*, 502 U.S. 224 (1991)). However, the court must still view the facts in the light most favorable to the plaintiffs. *Id*. (citing *Champion v. Outlook Nashville, Inc.*, 893, 900 (6th Cir. 2004)).

To arrest the Fowlers for violation of the Tennessee theft statute, the officers needed a reasonable and prudent belief that the Fowlers knew they were concealing stolen property and that they intended to deprive the owner of that property. Plaintiffs argue that

16

none of the facts the defendants relied on tend to show either of these elements. Defendants understandably do not argue plaintiffs' knowledge that the mower was stolen based on the alleged sale price of $4,500 as provided by Mosier. Had the price been much lower, a reasonable officer could infer the plaintiffs knew they were buying a stolen mower, whether or not an offer to sell had been made.

In addition, Fincher states that part of the information the officers considered when making the probable cause determination was the fact that the Fowlers had purchased a tractor for $12,000 which later turned out to be stolen. However, as Mr. Fowler states in his declaration, he contacted the Unicoi County Sheriff about the tractor when he saw in the newspaper that the man he purchased it from had been arrested for stealing machinery. The Sheriff of Unicoi County and another officer determined the tractor had been stolen, and they had it returned to the owner. This information was presumably available to Fincher and negates the inference that the Fowlers had knowledge that the zero-turn Toro mower was stolen.

Taking these facts in the light most favorable to the plaintiffs, a jury could find that there is insufficient evidence to show that the Fowlers knew the mower was stolen and that they intended to deprive the owner of the property. Since Fincher knew about the stolen tractor, he should have known about the Fowler's contact with the Unicoi County Sheriff and the return of the tractor to the rightful owner. That is information the officers could have obtained from the Fowlers and verified with the Unicoi County Sheriff before taking the

Fowlers into custody. There is at least a material issue of fact as to whether the defendant officers had probable cause to arrest the plaintiffs. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Gardenhire*, 205 F.3d at 315 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)); *see also Gregory v. City of Louisville*, 444 F.3d 725, 743 (6th Cir. 2006) ("In a § 1983 action, the existence of probable cause is a question of fact."). Therefore, summary judgment on the plaintiffs' § 1983 claim as to whether they were arrested without probable cause will be denied.

Mrs. Fowler also makes a claim that she was seized in her home in violation of the Fourth Amendment. Huffine, Fincher, and Randolph had all met, determined that there was probable cause to arrest the Fowlers, and directed officers to bring the Fowlers in for questioning. According to Mrs. Fowler's declaration, the arresting officers entered their home without consent, handcuffed her in the dining room, placed her in the back of a police car, and transported her to jail where she was retained against her will for over ten hours.

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). However, warrantless entries are permitted under "exigent circumstances." *See, e.g., Causey v. City of Bay City*, 442 F.3d 524, 529 (6th Cir. 2006). Exigent circumstances have been found to exist where (1) "officers were in hot pursuit of a fleeing suspect; (2) "the suspect represented an immediate threat to the arresting

officers and public"; or (3) "immediate police action was necessary to prevent the destruction of vital evidence or thwart the escape of known criminals." *Causey*, 442 F.3d at 529. None of these circumstances exist in this case.

Defendants did not have a warrant for Mrs. Fowler's arrest. The officers had interviewed the plaintiffs and removed the stolen Toro mower from their property. Arguably the officers had sufficient time to obtain a warrant. Under the facts of this case, a jury could find that the seizure of Mrs. Fowler in her home without a warrant was a violation of her Fourth Amendment rights. Therefore, summary judgment on this § 1983 claim will be denied as well.

Defendants have also moved for summary judgment on the excessive force claim asserted in the complaint. Plaintiffs have not responded to the specific arguments made by the defendants regarding this claim. Nevertheless, plaintiffs do not have an excessive force claim against Fincher, Huffine, and Randolph.

Paragraph 32 of the complaint states:

Defendants JAMES "BUDDY["] RANDOLPH, MIKE FINCHER, JOHN HUFFINE and JOHN DOE DEPUTY SHERIFFS placed Plaintiff Linda Fowler in handcuffs, with her hands restrained behind her back, and physically forced (sic) into the back seat of a patrol car with her face down on the seat of the car, whereafter she was transported to the Greene County Detention Center in Greeneville, Tennessee.

19

Paragraph 74 of the complaint states:

> DEPUTY JAMES "BUDDY" RANDOLPH, DEPUTY MIKE
> FINCHER AND DEPUTY JOHN HUFFINE and JOHN DOE
> DEPUTY SHERIFFS used excessive and unnecessary force
> against Plaintiffs by Defendants' JOHN DOE during their arrest
> and imprisonment including the application of metal handcuffs
> in a manner that caused Plaintiffs great pain and numbness in
> their wrists and thumbs.

Mr. Fowler was not handcuffed at his home, and in his declaration he makes no reference to being handcuffed at the jail. He only refers to being shackled. Mrs. Fowler mentions in her declaration about being handcuffed at the jail, but she makes no reference to the handcuffs being too tight. In fact, neither of the Fowlers in their declarations made any complaint about being subjected to excessive force while being held at the jail. Thus, the only possible claim for excessive force would be connected with Mrs. Fowler's arrest. However, Fincher, Huffine, and Randolph have all affirmatively stated in their affidavits given in support of their motions for summary judgment that they did not participate in taking the Fowlers into custody and bringing them to the jail. These affirmative statements are unchallenged by plaintiffs. Therefore, Mrs. Fowler's possible claim for excessive force during her arrest cannot stand as to these three defendants. Accordingly, summary judgment will be granted defendants on plaintiffs' excessive force claim.

Defendants Fincher, Huffine, and Randolph have also moved for summary judgment on plaintiffs' claim in their complaint that they have been denied "the equal protection of their fundamental civil rights provided them by Tennessee law in violation of

20

the Fourteenth Amendment." Plaintiffs have not responded to defendants' arguments

concerning this claim. However, the claim has no merit.

> The Equal Protection Clause prohibits states from making "distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). As in *Radvansky*, plaintiffs cannot make out an equal protection claim because plaintiffs merely allege that they were treated unfairly by the defendants, not that they were members of a protected class or treated differently from others. Likewise, the plaintiff in *Radvansky* also argued that the defendants deprived him of liberty without due process by arresting him without probable cause. We flatly rejected that theory because "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Id.* at 313.

*Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007). Plaintiffs complain they were

mistreated by defendants because they were arrested without probable cause. Their remedy

is through pursuing a claim for violation of their Fourth Amendment rights. Accordingly,

summary judgment on this claim will be granted.

In addition, defendants have moved for summary judgment on plaintiffs'

claims for alleged violation of 42 U.S.C. § 1988(a).[3] Once again, plaintiffs have not

---

[3] Section 1988(a) provides in pertinent part: "The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State where in the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United
(continued...)

responded to defendants' arguments. In any event, the claims have no merit.

>According to § 1988(a), state law is appropriately considered in a § 1983 claim only where there is no rule of federal law on point and state law is consistent with the Constitution and laws of the United States. "The express terms of § 1988(a) prevent us from *replacing* federal law with more favorable state law, as plaintiffs would have us do." *Wilson v. Morgan*, 477 F.3d 326, 332 (6th Cir. 2007); *see also Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 701 n.66, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one"); *Moor v. County of Alameda*, 411 U.S. 693, 703-04, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973) ("[W]e do not believe that the section [1988], without more, was meant to authorize the wholesale importation into federal law of state causes of action").

*Williams v. Leatherwood*, 258 F. App'x 817, 823 (6th Cir. 2007). The Fourth Amendment and case law interpreting the Fourth Amendment are applicable to plaintiffs' constitutional claims. There is no reason to consider Tennessee law and no reason to apply § 1988(a). Plaintiffs' claims based on § 1988(a) will be dismissed.

### B. Plaintiffs' State Law Claims

### False/Unlawful Arrest Claims

Plaintiffs have addressed the defendants' request for summary judgment on the false arrest claims, arguing that the motions should be denied for same reasons plaintiffs' § 1983 claims for arrest without probable cause were denied.

---

[3](...continued)
States, shall be extended to and govern the said courts in the trial and disposition of the cause."

22

> The gravamen of a suit for false arrest . . . is that the prosecutor charged the plaintiff with committing a criminal offense without probable cause and reasonable cause to believe that the accused was guilty of such offense and out of a sense of malice. The malice may be inferred from the want of probable cause.

*McLaughlin v. Smith*, 412 S.W.2d 21, 26 (Tenn. Ct. App. 1966) (citations omitted). The same is true for plaintiffs' false or unlawful imprisonment claims. "[F]alse imprisonment requires that the defendant must have acted without probable cause." *Brown v. SCOA Indus. Inc.*, 741 S.W.2d 916, 920 (Tenn. Ct. App. 1987) (citation omitted).

The court has already found material issues of fact concerning whether there was probable cause to arrest the plaintiffs. For the same reasons, there are issues of fact concerning the plaintiffs' claims for false arrest and false imprisonment, and the motions for summary judgment on these claims will be denied.

### Breach of Duty Claims

Plaintiffs allege in the complaint that Fincher, Huffine, and Randolph breached their duties as deputy sheriffs and failed to carry out their duties as deputies. Also under that count plaintiffs reference Tenn. Code Ann. § 8-19-301, the statute that addresses the official bond required of sheriffs and deputy sheriffs. Defendants only argue that the duty claims are duplicative of the previous allegations in the complaint without referencing the allegations concerning the official bond. Plaintiffs do not respond to defendants' arguments at all.

23

The duty claims include and are based on the defendants' official bond. However, the claims fail because the surety, which is a proper party, *State of Tennessee ex rel. Davis v. Hartman*, 306 F. Supp. 610 (E.D. Tenn. 1969), is not before the court. Only the "Doe Insurance Company" has been named as a defendant. However, an action cannot be commenced against fictitious parties. *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968) (action against Doe defendants never commenced because they were not identified nor served with process); *accord Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). "Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties." *Id*. at 240. "[U]ntil an amendment adding additional defendants has been permitted by the court, the John Doe allegations are merely 'surplusage'. . . ." *Dunn v. Paducah Int'l Raceway*, 599 F. Supp. 612, 613 n.1 (W.D. Ky. 1984) (citing *Hannah v. Majors*, 35 F.R.D. 179, 180 (W.D. Mo. 1964)). No surety is before the court, and the claims against these defendants based upon their official bond cannot proceed. Therefore, summary judgment is appropriate.

### Assault with Bodily Injury Claims

Defendants have moved for summary judgment on these state law claims. Plaintiffs have not addressed defendants' arguments. Paragraph 74 of the complaint references the use of handcuffs during plaintiffs' arrest and imprisonment in such a manner as to cause pain and numbness. This issue pertaining to defendants Randolph, Huffine, and

24

Fincher has already been addressed under plaintiffs' excessive force claims. For the same reasons set out in the court's discussion of those claims, plaintiffs cannot sustain claims for assault with bodily injury against these defendants. The claims will be dismissed.

### Claims Under the Tennessee Constitution

Plaintiffs have also alleged claims based on the Tennessee Constitution, and all three defendants whose motions are before the court have moved for summary judgment on these claims. Once again, plaintiffs have not responded to the defendants' arguments.[4] In any event, plaintiffs cannot state a claim for violation of the Tennessee Constitution because "Tennessee does not recognize an 'implied cause of action for damages based upon violations of the Tennessee Constitution.'" *Carlson v. Lunsford*, No. 05-1025 B/An., 2007 WL 470437, at *9 (W.D. Tenn. Feb. 8, 2007) (citing *Bowden Bldg. Corp. v. Tenn. Real*

---

[4] Arguably, all the claims that plaintiffs did not specifically address in their response to defendants' motions for summary judgment have been abandoned. *Abdulsalaam v. Franklin County Bd. of Comm'rs,* 637 F. Supp. 2d 561, 578 (S.D. Ohio 2009) ("Plaintiffs do not clearly respond to that argument in their brief and that failure alone warrants summary judgment in Defendants favor on that issue) (citing *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S. D. Ohio 2005) (plaintiff abandoned claim by failing to address it in his responsive pleading)); *see also Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999) ("The Court will treat that claim as abandoned because Kattar did not address it in his brief in response to Defendants' motion for summary judgment."); *Knittel v. First Fin. Mortgage Corp.*, No. 08-44-JBC, 2009 WL 1702174, at *3 (E.D. Ky. June 17, 2009) ("By failing to respond specifically to Citimortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citimortgage."); *Nat'l Info. & Commc'ns Equip. Network v. Willigan,* No. 06-28-DLB, 2007 WL 2979928, at *10 (E.D. Ky. Oct. 11, 2007) ("By failing to specifically respond to Defendants' arguments on the tortious interference claim, the Court concludes that Plaintiff has abandoned this claim."). However, as noted above, none of the claims plaintiffs failed to address ultimately had any merit to survive summary judgment.

25

*Estate Comm'n,* 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999)); *see also Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996) ("The plaintiff can state no claim of a state constitutional violation in this case because Tennessee does not recognize a private cause of action for violations of the Tennessee Constitution."). Accordingly, summary judgment on plaintiffs' claims for alleged violation of rights guaranteed by the Tennessee constitution will be granted as to defendants Randolph, Huffine, and Fincher.

IV.

*Conclusion*

For the reasons set forth above, the motions for summary judgment filed by Fincher, Huffine, and Randolph in their individual capacities will be denied to the extent they seek dismissal of plaintiffs' § 1983 claims for arrest without probable cause and Mrs. Fowler's § 1983 claim for arrest in her home without a warrant. The motions are also denied as to plaintiffs' state law claims for false arrest and false imprisonment. The defendants' motions for summary judgment are granted in all other respects. An order consistent with this opinion will be entered.

ENTER:

_____ s/ Leon Jordan _____
United States District Judge